IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN


LPP MORTGAGE, LTD., f/k/a      :      CIVIL ACTION
LOAN PARTICIPANT PARTNERS, LTD. :
                               :
          v.                   :
                               :
STEPHEN O. CARPENTER, et al.   :      NO. 09-15


MEMORANDUM


Bartle, J.                                    October 25, 2012

        In this diversity action, which was removed from the
Superior Court of the Virgin Islands, plaintiffs LPP Mortgage
Ltd., f/k/a Loan Participant Partners, Ltd. ("LPP"), and Siwell,
Inc., d/b/a Capital Mortgage Services of Texas ("Capital") seek
to foreclose on three mortgages that are in default.[1]  These
mortgages were executed between 1993 and 1996 by defendants
Stephen O. Carpenter and Pamela F. Carpenter, formerly husband
and wife.  Plaintiffs are also seeking a judgment against the
Carpenters for the unpaid balance owed on the loans secured by

---

1.  The court has jurisdiction over this matter pursuant to 28
U.S.C. § 1332 because the parties are of diverse citizenship and
the amount in controversy is in excess of $75,000.  LPP is a
Texas limited partnership with its principal place of business in
Texas.  The partners in LPP are a Texas corporation and a Nevada
corporation, both of which have their principal place of business
in Texas.  See Carden v. Arkoma Assocs., 494 U.S. 185, 187-92
(1990); Swiger v. Allegheny Energy, Inc., 540 F.3d 179, 182-83
(3d Cir. 2008).  Capital is a Texas corporation with its
principal place of business in that state.  The Carpenters are
citizens of the U.S. Virgin Islands.

these three mortgages and for attorneys' fees and expenses incurred in prosecuting this action.  Before the court is the joint motion of plaintiffs for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  The Carpenters have not filed any opposition to this motion.[2]

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or ... showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).

A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.

---

2.  Under the Third Scheduling Order, any party's opposition to a dispositive motion was to be filed and served on or before October 12, 2012.  Defendant U.S. Small Business Administration has filed a notice stating that it does not oppose the joint motion of plaintiffs for summary judgment.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986).
Summary judgment is granted where there is insufficient record
evidence for a reasonable jury to find for the plaintiffs.  Id.
at 252.  "The mere existence of a scintilla of evidence in
support of the plaintiff's position will be insufficient; there
must be evidence on which the jury could reasonably find for the
plaintiff."  Anderson, 477 U.S. at 252.  We view the facts and
draw all inferences in favor of the non-moving party.  Boyle v.
Cnty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998).  When
ruling on a motion for summary judgment, we may only rely on
admissible evidence.  See, e.g., Blackburn v. United Parcel
Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).

                              II.

        The following facts are undisputed:

        Between 1993 and 1996, Stephen and Pamela Carpenter
executed four promissory notes.  The Carpenters secured each of
these four loans with a mortgage on a parcel of land described
as:

            Parcel 9A-11 of Estate Nazareth
            No. 1 Red Hook Quarter,
            St. Thomas, Virgin Islands.

This parcel is also known as 9A-11 Vessup Lane, Estate Nazareth,
Charlotte Amalie, St. Thomas 00801 (the "Vessup Lane property").

The Carpenters executed the first of the four promissory notes (the "First Note") on May 13, 1993.[3]  Under the First Note, the Carpenters borrowed $228,000 from Mortgagelinq Corporation and agreed to repay that amount over 30 years with 8.125% annual interest.  The First Note required the Carpenters to pay a late fee on any payment made more than 15 days late.  This late fee would be 5% of the principal and interest that was not paid.

On May 13, 1993, the Carpenters also signed a mortgage (the "First Mortgage") on the Vessup Lane property in favor of Mortgagelinq.  The First Mortgage was recorded on that date.  It required the Carpenters to escrow with Mortgagelinq money needed to pay for certain insurance and taxes.  In the event of a default by the Carpenters, the First Mortgage permitted the holder to accelerate all payments due under the First Note.  The First Mortgage further authorized the holder of the mortgage to "pay whatever is necessary to protect the value of the Property and Lender's rights in the property" and any such payments by the mortgage holder would become an interest-bearing debt of the

---

3.  The copy of the First Note that Capital submitted in support of its motion for summary judgment was not signed by Pamela or Stephen Carpenter.  According to the chief executive officer of Capital, the company that received a subsequent assignment of the First Note and resulting mortgage, the exhibit attached to the motion for summary judgment is a "true copy" of the original.  Despite this omission, the copy before the court of the mortgage that secures the debt under the First Note is signed by both Carpenters.

Carpenters.  The First Mortgage specifies that the holder is entitled to recover reasonable attorneys' fees and costs in the event it initiates a foreclosure proceeding.

Mortgagelinq assigned the First Mortgage to Capital on October 31, 2002.  According to Capital's chief executive officer, Royce Lewis, the Carpenters are in default on their payments under the First Note.  Capital notified the Carpenters of this default and its intention to foreclose by letter dated September 1, 2010.[4]  Capital has elected to accelerate all payments due under the First Note.  Lewis asserts that the Carpenters owe Capital $164,163.18 in principal, $33,966.78 in accrued interest, $456.68 in "assessed fees," $4,846.59 in late charges, $3,505.42 in "escrow overdraft," and $5,858.60 in "overdrawn applied funds through September 18, 2012."  According to Lewis, the Carpenters' unpaid debt to Capital under the First Note is accruing interest at the rate of $36.54 per day.

On January 12, 1996, the Carpenters signed two more promissory notes.  Under one of these (the "Second Note"), they borrowed $155,700 from the U.S. Small Business Administration ("SBA") to be paid over 30 years with 4.0% annual interest.  On January 12, 1996, the date the Carpenters signed the Second Note, they executed a mortgage in favor of the SBA on the Vessup Lane

---

4.  Although LPP initiated this action in 2006, Capital was not added as a plaintiff until March 2012.

property (the "Second Mortgage"), which was recorded on February 5, 1996.  The Second Mortgage permits the holder to recover attorneys' fees incurred by the mortgagee in collecting the debt secured by that instrument.  The Second Note was modified in 1997 to reflect that the Carpenters owed the SBA $173,900.  In 1998, the Carpenters and the SBA further modified the Second Note to make a small increase in the amount of monthly payments.  Both the 1997 and 1998 modifications to the Second Note reported that the Carpenters owed a balance of $173,900. This suggests that the Carpenters paid only interest during 1997. When the Carpenters and the SBA modified the Second Note in 1997, they also signed an amendment to the Second Mortgage reflecting the new larger amount owed by the Carpenters and secured by the property.  That modification was recorded on December 10, 1997. No modification to the Second Mortgage was made when the Carpenters and the SBA made the 1998 modification to the Second Note, presumably because the balance owed by the Carpenters did not increase.

The SBA assigned the Second Note to LPP on February 8, 2001.  According to Randall C. Grasso, litigation counsel for an entity that services mortgages held by LPP, the Carpenters are in default on the Second Note and LPP has declared the entire amount owed under the Second Note due and payable.  Grasso states that as of September 18, 2012, the Carpenters owed $162,093.84,

consisting of $117,690.79 in unpaid principal, $27,752.13 in accrued interest, and $16,650.92 in "escrow charges."  These unpaid amounts are accruing interest at the rate of $12.8976208 per day.

On January 12, 1996, in addition to signing the Second Note and Second Mortgage, the Carpenters signed a note (the "Third Note"), under which they borrowed $78,100 from the SBA. The Third Note is secured by a mortgage (the "Third Mortgage"), recorded on February 5, 1996, which the SBA still holds.[5]  In its answer, the SBA admitted that the Third Mortgage is entitled to third priority on the Vessup Lane property.

On January 19, 1996, one week after signing the Second and Third Notes and the related mortgages, the Carpenters borrowed an additional $49,500 from the SBA.  They signed a note (the "Fourth Note") promising to repay that amount over 5 years at 4.0% annual interest.  The Fourth Note is secured by a mortgage (the "Fourth Mortgage") that was recorded on the same date as the Second Mortgage and Third Mortgage, February 5, 1996. Like the Second Mortgage, the Fourth Mortgage permits the holder to recover attorneys' fees incurred in attempting to collect the debt secured by that document.

---

5.  Although there is no evidence in the record on this point, counsel for plaintiffs represents that the Carpenters are in default on the Third Note as well.

The SBA assigned the Fourth Mortgage to LPP on June 26, 2001.  As with the Second Note, the Carpenters are in default on the Fourth Note, and LPP has declared the entire unpaid balance to be due and owing.  The Carpenters owe LPP $39,191.04 on the Fourth Note, consisting in $28,819.78 in principal and $10,371.26 in accrued interest.  Each day, this debt is accruing $3.15833321 in interest.

In their first amended complaint, the plaintiffs seek a judgment against the Carpenters for the unpaid amounts owed under the First, Second, and Fourth Notes.  They further seek an order foreclosing the First Mortgage and all junior mortgages on the Vessup Lane property and ordering that the property be sold to satisfy the defendants' indebtedness.  Plaintiffs ask the court to award them their counsel fees and expenses in bringing this action as well as attorneys' fees and expenses and other estimated costs that will be incurred by plaintiffs after entry of judgment, including property taxes and property insurance.

III.

Plaintiffs pursue foreclose of the First Mortgage and all junior mortgages.  "To prevail on a foreclosure claim, the plaintiff must show (1) the debtor executed a promissory note and mortgage, (2) the debtor is in default under the terms of the note and mortgage, and (3) the lender is authorized to foreclose on the property mortgaged as security for the note."  Thompson v.

-8-

Fla. Wood Treaters, Inc., 52 V.I. 986, 995 (D.V.I. 2009); see
Bank of N.S. v. Ross, No. 10-118, 2012 U.S. Dist. LEXIS 147254,
at *11-*12 (D.V.I. Oct. 12, 2012).  The undisputed facts set
forth above amply demonstrate that these requirements have been
met.  Defendants Stephen and Pamela Carpenter borrowed money
under four promissory notes between 1993 and 1996 and secured
each of those notes with a mortgage on the Vessup Lane property.
The Carpenters are in default on the loans secured by these
mortgages.  Each of the mortgages provides the holder the option
of obtaining possession through a foreclosure action in the event
of a default by the borrower.  In short, the undisputed facts
establish that plaintiffs Capital and LPP are entitled to
foreclosure on the Vessup Lane property as a matter of law.
Moreover, it is undisputed that the First Mortgage is entitled to
first priority, the Second Mortgage to second priority, the Third
Mortgage to third priority, and the Fourth Mortgage to fourth
priority.

     We consider next the amount of the Carpenters'
indebtedness to Capital and LPP.  As noted above, according to
the chief executive officer of Capital, the amount owed by the
Carpenters on the First Note includes $164,163.18 in principal,
$33,966.78 in accrued interest, $456.68 of assessed "fees,"
$4,846.59 of late charges, $3,505.42 in "escrow overdraft," and
$5,858.60 of "overdrawn applied funds through September 18,

2012." Lewis's affidavit does not explain how Capital incurred the "fees" or "escrow overdraft" expense. It also has not explained the meaning of the phrase "overdrawn applied funds." Unlike the principal, interest, and late charges, these terms are not used in the First Mortgage.

Similarly, LPP asserts that the Carpenters owe $162,093.84 on the Second Note, which includes $117,690.79 in unpaid principal, $27,752.13 in accrued interest, and $16,650.92 in "escrow charges." LPP has not explained the purpose of these "escrow charges," and it is unclear from the record or the Second Note or Second Mortgage how this expense was incurred and why it is the obligation of the Carpenters.

Recently, this court refused to include in a judgment certain fees claimed by a mortgage holder in a foreclosure action because those expenses were not explained in the affidavits submitted in support of its motion for summary judgment. Ross, 2012 U.S. Dist. LEXIS 147254, at *19-*22. We will exclude from the judgment in favor of Capital the amounts described by it as "fees," "escrow overdraft," and "overdrawn applied funds." Thus, Capital is entitled to recover $202,976.55 from the Carpenters on the First Note. We also will eliminate from the judgment in favor of LPP the amount described as "escrow charges." Accordingly, LPP is entitled to recover $145,442.92 from the

Carpenters on the Second Note.  On the Fourth Note, the Carpenters owe LPP $39,191.04 without any reduction.

The judgment entered by the court will also include interest that has accrued on the amounts owed since they were calculated by the plaintiffs as of September 18, 2012.  The judgment in favor of Capital on the First Note will include additional interest of $36.54 per day from September 19, 2012 until the date that judgment is entered.  The judgment in favor of LPP will include additional interest of $12.8976208 per day on the Second Note and additional interest of $3.15833321 per day on the Fourth Note for this period.

LPP and Capital further claim that they are entitled to attorneys' fees and expenses incurred in this litigation.  The First, Second, and Fourth Mortgages all permit the holder to recover attorneys' fees in the event that legal action is required to collect the debt secured by those instruments. Virgin Islands law provides:

> The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties; but there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto ....

5 V.I.C. § 541(b).  An award of attorneys' fees is within the discretion of the court.  Rode v. Dellarciprete, 892 F.2d 1177,

-11-

1182-83 (3d Cir. 1990); see Banco Popular de P.R. v. Gilbert, 424 F. App'x 151, 153-54 (3d Cir. 2011).

LPP and Capital, who are both represented by the same attorney, have each submitted a separate memorandum of costs in support of their respective requests for counsel fees and expenses. In LPP's memorandum, its counsel asserts that it has expended $2,683.52 in costs and billed a total of $45,517.67 in attorneys' fees for this action. Counsel anticipates billing a further $1,875 in post-judgment collection work.

At first blush these numbers are quite large for an uncomplicated foreclosure action. The court has reviewed each of the billing entries associated with LPP's fee request, however, and finds that they are justified and reasonable in light of the protracted history of this case. The Carpenters and LPP have been embroiled in this in litigation for over six years. We will not detail all of the events that caused this matter to stretch on for that period of time. It is sufficient for present purposes to note that this case was filed in the Superior Court of the Virgin Islands in August 2006. It nearly went to trial in that court in the spring of 2008, but for reasons that are not fully clear, trial was continued twice.[6] The parties thereafter conducted extensive settlement discussions. In January 2009,

_____

6. It appears from counsel's billing records that trial was rescheduled on one occasion because one or both of the Carpenters failed to appear.

after the matter had been pending over two and a half years,
defendant Pamela Carpenter removed the action to this court.
Further settlement discussions and settlement conferences with
the court, as well as formal discovery, ensued.  The billing
records reflect that the parties had negotiated a purportedly
final settlement agreement in the summer and fall of 2010, but by
December 2010, that settlement had unraveled.

When it became clear that settlement was out of reach,
LPP sought and was granted permission to file an amended
complaint adding Capital as a plaintiff and the SBA as a
defendant.  Having reviewed the detailed descriptions of the time
billed by plaintiffs' counsel, the court finds that counsel
worked efficiently and economically in representing LPP.  The
court will award LPP the $45,517.67 of requested counsel fees.

In contrast to the detailed time records submitted by
LPP's counsel, the list of expenses incurred by counsel contains
scant information about numerous charges.  There are a
significant number of entries that contain no description of any
kind.  This is true even of certain larger expenses, including
items valued at $75, $125, and $250.  The court will not award
expenses without some information from which the propriety of
that expense may be determined.  The expense entries bearing no
description total $841.77.  Thus, the court will reduce LPP's
requested expenses by this amount, from $2,683.52 to $1,841.75.

Plaintiff Capital requests $8,739 in attorneys' fees and $268.78 in expenses associated with its participation in this action.  Unlike the expenses associated with LPP's request, only $1.20 of the expenses incurred by Capital are unexplained.  We will grant Capital's request for expenses in the amount of $267.58.

The court has reviewed the billing entries submitted in support of Capital's fee request and compared these billing entries to those submitted in support of LPP's fee request.  The court has found 17 instances in which the same work has been charged to both clients.[7]  The total amount charged by plaintiffs' counsel for these 17 instances is $2,980.50.[8]  The court will reduce by this amount the award of attorneys' fees to Capital.  The court finds that the work billed by plaintiffs' counsel in representing Capital is otherwise reasonable.  The

7.  It is possible, of course, that in each of these seventeen instances plaintiffs' counsel split evenly between its clients the cost associated with the particular activity.  There is no evidence in the record, however, that this has occurred.

8.  The 17 entries at issue are as follows:  I.G.'s entries on October 18, 2011, March 23, 2012, March 26, 2012, March 27, 2012, April 5, 2012, May 8, 2012, September 13, 2012, September 18, 2012, and September 19, 2012; G.N.'s entry on March 27, 2012; G.G.'s entries on March 28, 2012, March 30, 2012, May 10, 2012; T.A.M.'s entry on July 31, 2012; R.H.D.'s entries on September 17, 2012 and September 19, 2012; and B.L.G.'s entry on September 18, 2012.  The billing records submitted by counsel refer to these individuals by their initials.

-14-

court will lower the award of attorneys' fees by $2,980.50, resulting in an award of $5,758.50.

Plaintiffs assert that they are entitled to recover from the Carpenters any expenses associated with the Vessup Lane property between entry of judgment and the sale of that property at auction.  After the foreclosure on the Vessup Lane property has been completed, plaintiffs may file a motion requesting additional relief.  The court will not now award counsel fees or expenses for anticipated post-judgment services by plaintiffs' counsel.  Plaintiffs may make a supplemental request for litigation fees and expenses at the appropriate time.

In sum, plaintiffs are entitled to a judgment foreclosing the First Mortgage and all junior mortgages on the Vessup Lane property.  We will enter judgment in favor of Capital and against the Carpenters in the amount of $210,354.61, consisting of $202,976.55 owed on the First Note with interest through September 18, 2012, $1,351.98 in interest that has accrued between September 19, 2012 and the date of judgment, $5,758.50 in attorneys' fees, and $267.58 in litigation expenses. We will enter judgment in favor of LPP and against the Carpenters in the amount of $232,587.45, consisting of $145,442.92 owed on the Second Note with interest through September 18, 2012, $477.21 in interest that has accrued on the Second Note between September 19, 2012 and the date of judgment, $39,191.04 owed on

-15-

the Fourth Note with interest through September 18, 2012, $116.86 in interest that has accrued on the Fourth Note between September 19, 2012 and the date of judgment, $45,517.67 in attorneys' fees, and $1,841.75 in litigation expenses.[9]

---

9.   Defendant Stephen Carpenter alleges in a cross-claim that defendant Pamela Carpenter promised in a November 26, 2003 divorce decree to hold him harmless for all outstanding mortgages and that, as a result, she alone is liable for this debt. Stephen Carpenter has filed a motion for summary judgment.  At present, that motion is not ripe for disposition.  The alleged liability of Pamela Carpenter to Stephen Carpenter for amounts owed under the notes and mortgages discussed above does not limit the liability of Stephen Carpenter to plaintiffs.